**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL SIMKO**, | ) | CIVIL ACTION NO.   19-765 |
| | ) | |
| Plaintiff, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES STEEL CORP.** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

Pending before the court is a motion to dismiss this case in its entirety (ECF No. 6) filed by defendant United States Steel Corporation ("USSteel"), with a brief in support.  Plaintiff Michael Simko ("Simko") filed a response and brief in opposition to the motion (ECF Nos. 11, 12), USSteel filed a reply brief (ECF No. 16).  On October 17, 2019, the court held oral argument on the motion and requested further briefing.  The supplemental briefing was completed on December 2, 2019 (ECF Nos. 18, 19) and the motion is ripe for decision.  The court appreciates the thorough and professional memoranda of law submitted by counsel for both parties.


Factual and Procedural Background

The facts are taken from the complaint (ECF No. 1) and are accepted as true for the purpose of resolving the motion to dismiss.  Simko began working for USSteel on August 22, 2005.  In August 2012, Simko was a larryman in the blast furnace department at the Edgar

Thompson plant in Braddock, Pennsylvania, when he successfully bid for a position as a spellman in the transportation department.

During his spellman training, Simko sought an accommodation for his hearing loss by requesting a newer two-way radio. No accommodation was provided. Simko's trainer refused to approve the completion of Simko's spellman training because Simko could not hear. Simko returned to his work as a larryman in November 2012. (ECF No. 12-1).

Simko filed a charge with the EEOC alleging violations of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq.. The charge of discrimination was signed on May 24, 2013, and received by the EEOC on May 28, 2013. On December 30, 2013, Simko was discharged (for the first time) for a car having lost power. (ECF No. 12-9 at 2). On May 27, 2014, Simko entered into a Last Chance Agreement and returned to work on June 1, 2014.

On August 19, 2014, Simko was discharged again. USSteel stated the discharge was based on a safety violation that occurred on August 15, 2014. The initial discipline for the incident was a five-day suspension, but it was converted into a discharge. Complaint ¶¶ 19-20. Simko grieved the discharge. The union withdrew the grievance.

Included in the documents submitted by Simko in response to the motion to dismiss[1] is an undated[2] handwritten letter to the EEOC stating, in relevant part, that Simko believed his discharge was in retaliation for filing charges with the EEOC. (ECF No. 12-2 at 12-14). This letter is not referenced in the complaint. There was no apparent action taken by the EEOC for the next year.

---

[1] EEOC documents may be considered in deciding a motion to dismiss without converting the motion into one for summary judgment. *Branum v. United Parcel Serv., Inc*., 232 F.R.D. 505, 507 n.1 (W.D. Pa. 2005).
[2] Simko states in his brief that EEOC received this letter on November 14, 2014. (ECF No. 12 at 8). The court will assume the truth of this allegation.

The first reference by the EEOC to a retaliation claim occurred in a letter from an investigator dated November 23, 2015. (ECF No. 12-4). Counsel entered an appearance with the EEOC on Simko's behalf on November 30, 2015, and on January 21, 2016, submitted an amended charge to the EEOC, alleging retaliation.[3] (ECF No. 12-9). In the amended charge, Simko stated that the latest date that discrimination took place was "08-19-2014." *Id*. The EEOC investigated the retaliatory discharge claim. On February 19, 2019, the EEOC issued a Determination that USSteel retaliated because it disciplined Simko more severely than a non-disabled comparator. (ECF No. 12-14). The Determination did not clearly state whether the retaliatory motivation was based on Simko's disability or his prior EEOC charge. *Id*.

Standard of Review

As set forth in Connelly v. Lane Construction Corp., 809 F.3d 780, 786-87 (3d Cir. 2016):

> A complaint may be dismissed under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." But detailed pleading is not generally required. The Rules demand "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id.; see also Sheridan v. NGK Metals Corp., 609 F.3d 239, 262 n. 27 (3d Cir. 2010). Although the plausibility standard "does not impose a probability requirement," Twombly, 550 U.S. at 556, it does require a pleading to show "more than a sheer possibility that a defendant has acted unlawfully," Iqbal, 556 U.S. at 678. A complaint that pleads facts "merely consistent with a defendant's liability ... stops short of the line between possibility and plausibility of entitlement to relief." Id.

---

[3] USSteel argues that by filing this amended charge, Simko concedes that his retaliatory discharge claim was not within the scope of his original charge.

(citation and internal quotation marks omitted). The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679.

Under the pleading regime established by Twombly and Iqbal, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." Iqbal, 556 U.S. at 675. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Id. at 679; see also Burtch v. Milberg Factors, Inc., 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

At the final step, the court is to assume all well-pled allegations to be true, construe those allegations in the light most favorable to the plaintiff, draw all reasonable inferences from them in favor of the plaintiff, and ask whether they "raise a reasonable expectation that discovery will reveal evidence" to support the legal claim being asserted. Id. at *7.

Legal Analysis

In the complaint, Simko asserts a single claim for retaliation under the ADA in connection with his second discharge in August 2014. USSteel contends that the retaliation claim is time barred and must be dismissed with prejudice.

Before a claimant may bring suit in federal court, he must exhaust his administrative remedies. *Robinson v. Dalton,* 107 F.3d 1018, 1020–21 (3d Cir. 1997). In Pennsylvania, a verified charge must be filed with the EEOC within 300 days of the alleged unlawful employment practice. *Urban v. Bayer Corp. Pharm. Div.*, 245 F. App'x 211, 212 (3d Cir. 2007) (citing *Watson v. Eastman Kodak Co.,* 235 F.3d 851, 854 (3d Cir. 2000)). The United States Supreme Court recently explained that a "charge-filing requirement is a processing rule, albeit a

mandatory one, not a jurisdictional prescription delineating the adjudicatory authority of courts."

*Fort Bend Cty., Texas v. Davis*, 139 S. Ct. 1843, 1851 (2019). The Third Circuit Court of

Appeals similarly instructs that a nonjurisdictional claim-processing rule "still has teeth."

*Guerra v. Consol. Rail Corp.*, 936 F.3d 124, 135–36 (3d Cir. 2019).

To determine whether a charge alleging unlawful termination was timely filed, the

limitations period is measured from the date on which the employee was advised of his

termination. *Urban*, 245 F. App'x at 213 (citing *Delaware State College v. Ricks,* 449 U.S. 250,

258 (1980); and *Watson,* 235 F.3d at 855). In this case, 521 calendar days elapsed from the date

Simko was discharged until he filed an EEOC charge alleging a retaliatory termination. Simko

acknowledges that the 300-day filing period elapsed.

Simko contends however, that his amended charge should be regarded as timely because:

(1) the limitations period should be equitably tolled when he sent a handwritten letter to the

EEOC complaining about retaliation within three months of his discharge (ECF No. 12-2), but

the EEOC failed to take action for over a year; (2) USSteel waived this defense by not raising it

sooner; and (3) the EEOC rejected USSteel's untimeliness defense. Simko also argues that his

retaliation claim relates back to his original EEOC charge in 2013. Each of these arguments will

be addressed.

A. Equitable tolling

The handwritten letter[4] (ECF No. 12-2) does not constitute a "charge" and Simko does

not contend otherwise. The document is not verified, as required, and did not cause the EEOC to

---

[4] The documents were produced by Simko's counsel in the format they were received from EEOC. The letter appears to be part of a larger document because page one starts: "In closing ...." (ECF No. 12-2 at 12.) Simko is primarily complaining in the letter about his <u>first</u> discharge

initiate an investigation. *Urban*, 245 F. App'x at 213 (citing *Buck v. Hampton Twp. Sch. Dist.,* 452 F.3d 256, 265 (3d Cir. 2006). Although Simko was pro se at the time, he knew how to file a proper EEOC charge because he had done so in May 2013.[5]

The EEOC's mere failure to act on the handwritten letter does not justify equitable tolling of the 300-day filing period. The court of appeals has recognized three circumstances in which equitable tolling would be appropriate: "(1) [W]here the defendant has actively misled the plaintiff respecting the plaintiff's cause of action, and that deception causes non-compliance with an applicable limitations provision; (2) where the plaintiff in some extraordinary way has been prevented from asserting his rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Pizio v. HTMT Glob. Sols.*, 555 F. App'x 169, 176 (3d Cir. 2014) (citations omitted). None of these circumstances apply in this case. Simko does not allege that USSteel actively misled him. Simko was not prevented in any way (let alone an extraordinary way) from exercising his rights. Simko did not explain why he could not have simply filed a timely amended charge with the EEOC to assert a retaliatory discharge. Finally, Simko did not timely assert his rights in the wrong forum. In sum, under the standard established by the court of appeals there is no basis to equitably toll the limitations period.

B. EEOC finding of timeliness/ waiver

It is well-settled that courts are not bound by the EEOC's view of whether a claim is timely filed. *Urban*, 245 F. App'x at 213 ("our case law is clear that 'the EEOC's belief as to the timeliness of a charge is not determinative.'") (quoting *Kocian v. Getty Ref. & Mktg. Co.,* 707

---

in December 2013, the lack of support from his union, and being brought back on a Last Chance Agreement. *Id*. at 13.

[5] Simko concedes that the May 2013 charge did not allege retaliation. (ECF No. 12 at 8).

F.2d 748, 754 n. 9 (3d Cir. 1983), *overruled on other grounds by Colgan v. Fisher Sci. Co.,* 935

F.2d 1407, 1414 (3d Cir. 1991) (en banc)).

It is equally clear that USSteel would not waive this defense by failing to raise it with the

EEOC.  As this court explained, "the non-adversarial, non-binding nature of EEOC proceedings

means that an employer's failure to raise the timeliness issue before the EEOC cannot have the

binding effect of a waiver."  *Byrnes v. Herion, Inc*.,757 F.Supp. 648, 653 (W.D. Pa. 1990)

("[W]e are unable to find any authority for the proposition that a waiver under these

circumstances would be appropriate.").  In any event, USSteel did, in fact, argue to the EEOC

that Simko's retaliatory discharge claim was untimely filed.  (ECF No. 12-13).

In sum, the amended charge filed in January 2016 does not satisfy Simko's administrative

prerequisites.  USSteel's defense that the amended claim is untimely is cognizable and

meritorious.

## C.  Whether the retaliation claim is within the scope of Simko's original charge

Simko argues that his retaliatory discharge claim is within the scope of his original

charge.  Simko also contends that his claim is cognizable because the EEOC investigation in this

case did actually address retaliation, albeit not until two and a half years later.  These are the

issues on which the court requested supplemental briefing.

### 1.  Third Circuit Court of Appeals precedent

The court notes, as an initial matter, that if court of appeals precedential decisions are in

conflict, it is the older opinion that controls.  *Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir.

2009) ("[t]his Circuit has long held that if its cases conflict, the earlier is the controlling authority

and the latter is ineffective as precedents.") (quoting *Pardini v. Allegheny Intermediate Unit*, 524 F.3d 419, 426 (3d Cir. 2008)).

An aggrieved employee is required to file a charge to initiate the statutory scheme for remedying discrimination. *Hicks v. ABT Associates, Inc.*, 572 F.2d 960, 963 (3d Cir. 1978). Once the EEOC receives a charge, it gives notice to the employer and investigates whether there is reasonable cause to believe that the charge is true. *Id.* If cause is found, the EEOC must attempt to settle the dispute on an informal basis. *Id.* If no reasonable cause is found, or if reconciliation attempts prove futile, the charging party is issued a right to sue letter. *Id.* In *Waiters v. Parsons,* 729 F.2d 233 (3d Cir. 1984), the court explained the underlying rationale for not requiring that a new formal charge be filed if the new allegations of discrimination are related to the original charge: "Once the EEOC has tried to achieve a consensual resolution of the complaint, and the discrimination continues, there is minimal likelihood that further conciliation will succeed." *Id.* at 237. Under these circumstances, the policy of promoting conciliation would not be furthered by allowing the defendants to delay having to answer in court for additional discriminatory actions taken against an employee for asserting her rights. *Id.* at 238.

As Simko recognizes, the oldest case to address whether a new claim of discrimination relates back to an earlier charge is *Hicks*. In *Hicks*, the court adopted an objective test: "Once a charge of some sort is filed with the EEOC, [ ] the scope of a resulting private civil action in the district court is defined by the scope of the EEOC investigation which can **reasonably** be expected to grow out of the charge of discrimination." 572 F.2d at 966 (emphasis added, citations omitted). The court further explained that a discrimination claim is within the scope of

the charge if, presuming a reasonable investigation had occurred, the EEOC would have been informed of that discrimination claim. *Id*. at 967.

The court cautioned that a mere finding that the EEOC would have discovered a claim for discrimination in the course of a reasonable investigation "does not itself meet the standard." *Id*. A district court must further find that the claims which would have been uncovered were reasonably within the scope of the charge filed with the EEOC. "Otherwise, the charging party could greatly expand an investigation simply by alleging new and different facts when he was contacted by the Commission following his charge." *Id*.

In *Hicks*, the employee's original charge alleged only race discrimination. The court held that there was a genuine issue of fact about whether the employee reasonably attempted to amend his charge to include sex discrimination, which the EEOC improperly refused to accept. *Id*. at 964. The court noted that the amendment could relate back to the original filing date even if the amendment was filed beyond the 180-day deadline. *Id*. at 965. The court emphasized that the alleged sex discrimination arose "from the same acts which support claims for race discrimination." *Id*. The claim of sex discrimination "Hicks says he tried to have incorporated in his charge would have been 'directly related to' the facts in the original charge and thus would have related back to the original filing date." *Id.* In reasonably investigating the charge of race discrimination, there was a "fair inference that Hicks would have told the EEOC investigator that he believed that sex discrimination was a cause of the disparate treatment." *Id*. at 966.

The next relevant precedential decision of the court of appeals was *Waiters*. In *Waiters*, the court rejected the Fifth Circuit Court of Appeals' per se rule that all claims of retaliation are "ancillary" to the original administrative complaint and therefore no further EEOC complaint need be filed. 729 F.2d at 237 n. 10 (quoting *Gupta v. East Texas State University*, 654 F.2d 411

(5th Cir. 1981)). Instead, the court adopted a case-by-case approach under which district courts must examine carefully the initial charge and the additional claim to determine whether a second charge should have been filed. *See Crawford v. Verizon Pa., Inc.*, 103 F. Supp.3d 597, 610 (E.D. Pa. 2015).

In *Waiters*, the initial complaint charged a specific instance of retaliation for the filing of her informal complaint a year earlier. The EEOC investigation went beyond the specific problem alleged in the formal complaint and found evidence of retaliatory intent in a pattern of actions by the employer. 729 F.2d at 238. The employee alleged that her discharge (for which she did not file a new charge) was the product of this same retaliatory intent. The employer argued that the discharge claim was not within the scope of the investigation because different officials committed the allegedly discriminatory acts, more than thirty months passed between the formal complaint and the discharge, and the alleged retaliatory acts were of a different nature. The court rejected this argument, and explained: "While it is true that the allegedly discriminatory officials and acts are different, **the core grievance-retaliation-is the same** and, at all events, it is clear that the allegations of the appellant's complaint fall within the scope of the district director's investigation of the charges contained in the 1979 formal complaint." *Id*. (emphasis added).

In *Antol v. Perry*, 82 F.3d 1291, 1295 (3d Cir. 1996), the court held that a charge of disability discrimination did not encompass a new claim for gender discrimination. The court explained that the "specifics of his disability discrimination charge do not fairly encompass a claim for gender discrimination merely because investigation would reveal that Antol is a man and the two employees who received the positions are women." *Id*. at 1296. Because the EEOC investigation properly focused on disability discrimination, neither the EEOC nor the employer were put on notice of a gender discrimination claim. *Id*. at 1296. The court explained that the

employee failed to exhaust administrative remedies for his gender discrimination claim because the EEOC was not afforded "the opportunity to settle [the gender discrimination] disputes through conference, conciliation, and persuasion, avoiding unnecessary action in court." *Id. Antol* distinguished *Waiters* "because [in *Waiters*] the core grievances in the suit filed and the earlier EEOC complaint were the same—retaliation." *Id.* at 1295.

In *Robinson v. Dalton,* 107 F.3d 1018, 1024 (3d Cir.1997), the court of appeals provided additional guidance on how to determine whether a new claim falls within the scope of the original charge. *Robinson* described the *Waiters* decision as follows:

> in *Waiters* we identified two circumstances in which events subsequent to a filed complaint may be considered as fairly encompassed within that complaint, either where the incident (1) falls within the scope of a prior EEOC complaint, or (2) falls within the scope of the EEOC "investigation which arose out of it." *Id.* at 235.[6] We decided that the EEOC investigation, which apparently had been broadened by the EEOC, encompassed the underlying conduct leading to the ultimate discharge, and that there was nothing to be served by requiring Waiters to file a second complaint. *Id.*

*Id.* at 1025.

In *Robinson*, the EEOC expressly declined to include the employee's retaliatory discharge claim in its investigation, even though the subject of his prior complaints was used as a basis for the employer's decision to discharge him. *Id.* at 1025-26. The court reiterated that the Third Circuit Court of Appeals rejected the "per se" rule that all retaliation claims fall within the scope of a prior charge, but courts must examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis. *Id.* at 1024. The case was remanded for further consideration. The *Robinson* decision identified several factors:

> Factors the district court may consider in making this determination include 1) whether the previous three complaints alleged the same retaliatory intent inherent

---

[6] In *Waiters*, the court added the proviso "provided that the victim can still bring suit on the earlier complaint." 729 F.2d at 235. If a claim is bootstrapped to a prior EEOC charge that is untimely, neither claim is properly before the court. *Fenton v. Port Auth. of NY & NJ*, 777 F. App'x 45, 49 (3d Cir. 2019).

in the retaliatory discharge claim, *Waiters*, 729 F.2d at 238, 2) whether the subject of these previous complaints were used as a basis for the Navy's decision to terminate Robinson; and 3) whether the EEOC should have been put on notice of Robinson's claim of retaliatory discharge and therefore investigated that claim, *Hicks*, 572 F.2d at 966. In light of our precedent, the court may also want to reexamine whether there is enough overlapping in Robinson's subsequent allegations with the earlier complaints that this discharge complaint fairly falls within the scope of the earlier complaints.

*Id.* at 1026.[7]

This court asked the parties to consider whether the Third Circuit Court of Appeals' test is objective or subjective. In *Hicks*, the court held that the parameters of the civil action are defined by the scope of the EEOC investigation which can "reasonably" be expected to grow out of the charge. 572 F.2d at 966. In *Antol*, the court similarly explained that the claim must fall "fairly" within the scope of the prior EEOC complaint. 82 F.3d at 1295. These decisions adopt an objective test, that is not dependent upon the actual scope of the EEOC investigation.

*Waiters* contains inconsistent language. It purported to adopt the "fairly within the scope of the prior EEOC complaint" test, citing *Hicks*. 729 F.2d at 237. The court also stated, however, that an employee is not required to exhaust administrative remedies if the incident "falls within the scope of a prior EEOC complaint or the investigation which arose out of it." *Id.* at 235 (omitting a reference to "reasonably" or "fairly"). *Waiters* recognized that the EEOC's actual investigation of retaliation was broader than the original charge. *Id.* at 238. The decision in *Robinson,* in describing *Waiters*, entirely omitted any reference to charges "reasonably" and "fairly" arising from the investigation. 107 F.3d at 1025. *Robinson* appears to endorse a subjective test in which exhaustion is not required when the charge was actually within the scope of the EEOC's investigation. The court of appeals continues, however, to apply the objective

_____

[7] In *Robinson v. Consol Pennsylvania Coal Co. LLC*, No. 2:18-CV-00555-NR, 2019 WL 6338464, at *7 (W.D. Pa. Nov. 27, 2019), the court recently explained that the test "turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it."

test.  *See Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 164 (3d Cir. 2013) (adopting "fairly within scope" test and holding that original charge of sexual harassment did not encompass claim of retaliation).

The court believes that these precedents can be harmonized.  The lesson of *Waiters* is that the EEOC investigation of an original claim of retaliation will necessarily encompass additional allegations of retaliation, because it is the same "core grievance" (i.e., same kind of discrimination).  The lesson of *Hicks* and *Robinson* is that an EEOC investigation could reasonably encompass different types of discrimination if they are based on the same set of underlying facts.  The lesson of *Antol* is that a new claim is not fairly within the scope of an EEOC investigation if it is based on different facts and a different kind of discrimination.  As noted above, to the extent that the decisions cannot be reconciled, the older, objective standard set forth in *Hicks* and *Antol* is controlling.

2.  Application to this case

With this background, the court concludes, after a careful analysis, that the conduct alleged by Simko in the complaint in this case (i.e., retaliation in connection with Simko's second termination in August 2014) is not fairly within the scope of his original EEOC charge or the resulting investigation.   It is *Antol*, not *Waiters*, that is most analogous to this case.

Simko's complaint is based on a different kind of discrimination than his original charge.  Unlike *Waiters*, the "core grievance" in Simko's initial charge did not involve retaliation -- there was no reference to retaliation in Simko's original charge at all.  Simko's original EEOC charge, as in *Antol*, alleged disability discrimination in the transportation department for failing to accommodate Simko's hearing loss for a position as a spellman.  (ECF No. 12-1).

Simko's retaliatory discharge claim is also based on different facts than his original charge. Simko's disability discrimination claim was relatively narrow and discrete. The two individuals identified in the original charge were a trainer, Kevin Puckey, and a supervisor, Brian Spiller, in the transportation department. The alleged conduct was a failure to accommodate his hearing loss by providing a newer two-way radio. A timely investigation of the incident involving the transportation department would not have encompassed the alleged retaliatory discharge alleged in the complaint in this case, which involved different supervisors, a different department, and a different, discrete safety violation incident. Simko's second discharge did not even occur until almost two years later, in August 2014.[8]

The subject of the original EEOC charge (Simko's efforts to seek accommodation for his hearing loss) was not cited by USSteel as the basis for either of his discharges. As set forth in Simko's amended EEOC charge, he was discharged on December 30, 2013, for a car having lost power. (ECF No. 12-9). He was discharged a second time in August 2014 (the only claim set forth in the complaint) for violating a last chance agreement by failing to sign-out in two areas. *Id*. In sum, as in *Antol*, the complaint in this case alleges a different kind of discrimination and is based on entirely different facts from the original charge. There is no reason that the EEOC or USSteel would have reasonably or fairly been put on notice and investigated an alleged August 2014 retaliatory discharge as part of its investigation of the 2012 alleged failure to accommodate Simko's hearing loss.

Several courts have reached similar conclusions, holding that nothing in the original charge could have put the EEOC on notice of the employee's later retaliation claim. *See*

---

[8] The last sentence of ¶ 3 of the initial charge arguably expands the scope of the hearing loss inquiry to include November 2012, when "Gary Evans, Walking Boss, told [Simko] that if [he] couldn't hear, [he] must be disabled and should not work anywhere in the plant." (ECF No. 12-1 at 2). This fact does not change the court's analysis because it does not implicate retaliation.

*Crawford*, 103 F. Supp. 3d at 610; *Thomas v. St. Mary Med. Ctr.*, 22 F. Supp. 3d 459, 471 (E.D. Pa. 2014) (employee failed to exhaust retaliation claim because she failed to check the "retaliation" box and presented no facts in support of a retaliation claim in her initial charge); *McGinnis v. Donahoe*, No. 12-1880, 2015 WL 507043 *12 (W.D. Pa. Feb. 6, 2015) (retaliation and hostile work environment claims not fairly within the scope of original charge). In sum, the complaint must be dismissed because Simko failed to exhaust his administrative remedies regarding his retaliatory discharge claim under applicable Third Circuit precedent.

The court will briefly address Simko's alternative argument that exhaustion is excused because the EEOC actually investigated his retaliation claim. In this case, the EEOC did not conduct an unfairly narrow investigation of Simko's original charge in May 2013 – instead, it apparently conducted no investigation at all, for several years. In May 2015, the EEOC began a belated investigation, Simko filed an amended charge in January 2016 alleging retaliation, and the EEOC eventually found the discharge was retaliatory. The court in *Hicks* rejected a standard that would penalize a plaintiff if the "EEOC's investigation is unreasonably narrow or improperly conducted." 572 F.2d at 966. This case presents the opposite situation – whether the employer should be penalized if the EEOC's investigation is unreasonably broad (by addressing a retaliation theory that was not reasonably within the scope of Simko's initial charge). The parties did not cite any authorities addressing this particular situation.

There are two fatal flaws with Simko's argument. First, the court of appeals in *Hicks* cautioned, in adopting an objective test, that exhaustion of remedies is not dependent on the actual scope of the EEOC's investigation. As the court explained: "Otherwise, the charging party could greatly expand an investigation simply by alleging new and different facts when he was contacted by the Commission following his charge." *Hicks*, 572 F.2d at 967. Second, under

the circumstances of this case, the investigation of Simko's claim for retaliatory discharge was untimely made. As the court recently explained in *Fenton*, a new claim might relate back if the employee can still sue on the original charge but if a claim is bootstrapped to a prior EEOC charge that is untimely, neither claim is properly before the court. 777 F. App'x at 49. In this case, Simko has no timely claim to which to bootstrap his retaliatory discharge claim.

Conclusion

Simko's complaint in this case seeks redress for an alleged retaliatory discharge in August 2014. Simko recognizes that he failed to file a charge of retaliation with the EEOC within 300 days of that discharge. For the reasons explained above, based upon the undisputed record Simko's amended charge is untimely and his retaliation claim is not within the scope and does not relate back to his original EEOC charge, which concerned a failure to accommodate his hearing loss in August 2012.

Because Simko failed to exhaust his administrative remedies, any effort to amend the complaint would be futile and inequitable. In accordance with the foregoing, the motion to dismiss (ECF No. 6) will be GRANTED and the complaint will be dismissed with prejudice and without leave to amend. The case will be marked closed.

An appropriate order follows.


December 13, 2019

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL SIMKO**, | ) | CIVIL ACTION NO. 19-765 |
| | ) | |
| Plaintiff, | ) | JUDGE JOY FLOWERS CONTI |
| | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| **UNITED STATES STEEL CORP.** | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

AND NOW this 13th day of December, 2019, in accordance with the memorandum opinion, it is hereby ordered that the motion to dismiss (ECF No. 6) is GRANTED. The complaint is DISMISSED with prejudice and without leave to file an amended complaint. The case will be marked closed.

BY THE COURT:

/s/ Joy Flowers Conti
Joy Flowers Conti
Senior United States District Judge